Frost, J.
delivered the opinion of the Court.
If a person sells goods, supposing, at the time of the contract, he is dealing with a principal, but afterwards discovers that the person with whom he is dealing is not the principal in the transaction, but agent for a third person, though he may, in the mean time, have debited the agent with them, may afterwards recover the amount from the real princi-Pal- It is manifest that Weir ordered the Piano not on his own account, but as agent for James. But he did not disclose to the plaintiffs the name of his principal. The 'plaintiffs, then, had an election to sue either Weir or his principal for the purchase money. As Weir, by the sale and credit given to him by the plaintiffs, became liable to them for the price; so, if he chose to affirm that contract, the property in the Piano vested in him. The custom, which it was proposed to prove, that a person ordering goods for another, (and not disclosing his principal, which is a necessary qualification,) is regarded as the vendee, is in conformity with the law; and the evidence offered, being thus immaterial, was properly rejected. It may be admitted that the shipment of *545 the Piano, pursuant to Weir’s order, was a sufficient delivery to the vendee, (Weir or James,) to complete the contract of, sale, and change the property. But the concurrence of both parlies is necessary to a contract; and a contract of sale, like any other contract, may be rescinded with the assent of both parties. The plaintiffs, after they discovered that James was the principal, might have elected to charge him with the sale. But James rescinded the sale, and by sueing the defendant in trover, they have assented to the rescission. So Weir might, with the consent of the plaintiffs, have disclaimed a purchase on his own account, and referred all he had done to his agency. If the plaintiffs assented to this, the Piano would be in his possession, on deposit, for them. Their right of property (James having rescinded the contract) would be revested in them; and they might maintain trover for a conversion of the Piano.
Did not Weir disclaim any purchase, on his own account, and renounce any title to the Piano 1 He was employed as an agent. As soon as it arrived, he sent the bill of lading to James, to pay the freight and expenses, as he had done when a former order was executed for him. Afterwards, he declared to James that he did not consider him (James) bound, and if “ the gentlemen missed the sale of their article, they had no body to blame but themselves.” In his letter to the plaintiffs, of the 5th June, he expressly affirms his agency, and renounces any purchase, on his own account, when he informs them that the gentleman for whom the Piano was ordered, refused to take it; and that they must, therefore, retain the instrument. In this posture of the affair, Weir died. He had plainly declared that, in ordering the Piano, he merely acted as an agent, and disclaimed any title to it. If he received the Piano, in his life time, he received it merely as consignee. If the defendant, his executor, received it after his death, it was received on the same terms. An executor has no authority to charge the deceased by any contract he may make. If a consignee has a right to take the goods at a stipulated price, and elects to hold them as consignee, after his death his executor cannot elect to take them as a purchase. The Piano came into the possession of the defendant as a bailment, and by the sale of it he has been guilty of a conversion.
The motion is dismissed.
Richardson, J. — O’Neall, J. — Evans, J. — and Ward-law, J. — concurred.

Motion refused.